The opinion of the Court was delivered by
Tilghman C. J.
This case comes before us, on a rule to shew cause why an information in nature of a quo warranto, should not be granted against Daniel Bussier, for exercising the office of “ Inspector of salted provisions for the port of PhiladelphiaIt is of importance, because a constitutional point is involved in it, and has been very well argued. The counsel for Benjamin Reynolds the relator, have endeavoured to establish two positions. — 1. That the general assembly and not the Governor, have the right of appointing to this office. — 2. That even if the Governor has the right of appointment, he has not the power of removal from office. Each of these positions shall be considered.
1. It appears somewhat singular, that the Governor’s right of appointment should be denied by Mr. Reynolds. He *457 has received appointments from three successive Governors: first from Gov. M‘Kean, in the year 1807, then from Gov. Snyder, in 1809, and last from Gov. Findlay, in 1818, so that he has held this office, and exercised its duties, without question for twelve years and a half, when he was removed by Gov. Findlay, who appointed Mr. Bussier in his place. And what is more singular, Mr. Reynolds still continues to claim and to exercise the office. Nevertheless, if he has at length discovered that all this was error, he has a right to bring his case 'before the Court, and they are bound to do him justice. The right of appointment, as well as of removal, depends on our Constitution, adopted 2d September, 1790. By the 1st sect, of the 2d article, the supreme executive power of the Commonwealth, is vested in the Governor; and by the 8th section of the same article, the Governor is to appoint all officers tvhose offices are established by this Constitution, or shall be established by law, and whose appointments are not therein otherwise provided for. It must have been the intent of the Constitution to provide for the appointment to all offices then existing, and not inconsistent therewith, or which should thereafter exist. And the words which were made use of, seem adequate to the purpose; for there could not be any existing office, which, if established at all, was not established by the Constitution; and as for future offices, they could only be established by law. When I speak of the Constitution, I include the Schedule which is to be taken along with it. Now by the 1st section of the Schedule, “ all laws of the Commonwealth in force at the time of making the alterations and amendments introduced by the Constitution, and not inconsistent therewith, were continued, as if the said alterations and amendments had not been made.” Then, as all offices in existence at the time of adopting the Constitution, must have been established by law, it follows that they were all recognised and established by the Constitution, unless inconsistent with some of its provisions. It is to be understood, that in what I have said, I do not mean to include certain offices, (so called, when that word is taken in its largest sense) of a local, limited, or a corporate nature, which have not been supposed to be comprehended in the Governor’s power of appointment. But it is unnecessary to embarrass the present question with the consideration of those inferior offices, as it is conceded, that the office of in *458 spector of salted provisions is of a general and important nature. This office was established by an act of assembly, passed in the year 1727; and there is no provision in the Constitution, for an appointment of the officer by any other person than the Governor. Why then shall not the Governor appoint him ? Because, say the counsel for the relator, the act of 1727, which establishes the office, give the right of appointment to the general assembly, and that act being continued by the Schedule annexed to the present Constitution, the whole law is in force, and consequently the appointment of the officer remains in the Legislature. The argument is ingenious, but not quite sound; because it may be, that so much of the act of 1727, as relates to the appointment of the officer, had been abrogated, and if that was the case, there would be no pretence for saying that the Constitution of 1790 revived what had been abrogated. Let us examine then, how this matter stood on the 2d September, 1790. By the act of 18th August, 1727, this office was established, and Nathaniel Griffiths, was appointed to execute it; and it was further provided as follows. “ And if the said Nathaniel Griffiths or other person, hereafter appointed to be the officer aforesaid, shall by any accident be rendered incapable, or neglect to execute the said office, or shall happen to die, before or after the time of putting this present act in execution, then, and so often, and from time to time, it shall and may be lawful to, and for the mayor, together with any two aldermen of the city of Philadelphia, to supply his place, by some other fit and capable person, who shall thereupon be the officer for putting this act in execution, until the assembly appoint another.” It would seem, that it was the intent of this act to reserve the appointment to the assembly, without the Governor’s participation; but we have no evidence in what manner the appointments were made, from the year 1727, to the. revolution in 1776. By the Constitution of Pennsylvania, formed in the year 1776, the supreme executive power was vested in a President and council; in whom was also vested the power “ to appoint and commissionate Judges, naval officers, Judge of the Admiralty, Attorney General, and all other officers civil and military, except such as are chosen by the general assembly, or the people, agreeable to this frame of government, and the laws that may be made hereafter, and shall supply every vacancy in any office *459 occasioned by death, resignation, removal, or disqualification, until the office can be filled in the time and manner directed by law, or this Constitution.’’ — The appointment of certain specified officers, is given to the general assembly, and of others, to the people; but no particular mention is made of the office in question, or of other similar offices, such as the inspector of flour, of lumber, &c. By the evidence which has been laid before us, it appears, that concerning the right of appointment to those offices, there was a difference of opinion between the general assembly, and the supreme executive council. For, on the 8th April, 1777, the inspector of flour was appointed by the council, and on the 19th September, 1780, the inspector of salted provisions was appointed by the general assembly. But this difference was remedied, after the meeting of the council of Censors in the year 1784, who were of opinion that according to the true intent of the Constitution of 1776, the supreme executive council had the right of appointing to all offices, not plainly given by that Constitution to the general assembly or the people. In this opinion, the Legislature acquiesced, as appears, by an act passed the 4th April, 1785, for the express purpose of setting this important question at rest. By this act, after a preamble, in which is recited the opinion of the council of Censors, “ that the appointment of the revenue, and all other officers, not expressly assigned to the house of assembly, or to the people by the Constitution, which had been exercised by the general assembly, was a deviation from the Constitutionit was enacted as follows: “ that the choice of the Speaker of the house, clerks, and other officers and servants of the same, proper andbefitting the general assembly as a legislative body, the delegates to represent the State in Congress, the Treasurer of the State, Registers of wills, and for granting letters of administration, and the Recorders of deeds, Trustees of the loan office, and a concurrency of votes with the members of the supreme executive council, in the election of President and Vice President of Council, as mentioned in the Constitution of the State, are, and shall be, carefully reserved to the general assembly for the time being; and that all other officers necessary to the execution of the laws of this Commonwealth, (such as are specially reserved for the choice of the people, or plainly directed by the Constitution to be otherwise chosen and appointed, only *460 excepted,) shall be deemed and taken to be, and the same are accordingly by this act, declared to be in the nomination and appointment of the executive council, subject however £0 times and manner of holding the same which the Constitution and laws do, or shall prescribe.” In April, 1785, very soon after the passing of this law, the executive council, (John Dickenson being President,) appointed an inspector of flour, and on the 25th June, 1785, they appointed Thomas Prichet, inspector of salted provisions, (the office in question.) And in November, 1787, by the same authority, (Benjamin Franklin being President,) there was another appointment to the same office, and to the office of inspector of lumber. In November, 1787, the council appointed another inspector of lumber. Nor have we had any evidence of an appointment to any of these offices by the general assembly, from April, 1785, to September, 1790. So that we have the construction of the Constitution of 1776, fixed, by the council of Censors, whose special duty it was to interpret it, by the general assembly, and by the supreme executive council, with Benjamin Franklin at their head, who is supposed to have had a preponderating influence in the formation of that Constitution, and must therefore have understood it. We see then, that at the time of the formation of the Constitution of 1790, there was the best authority for the opinion, that the act of 1727, so far as respected the appointment of ‘ inspector of salted provisions, was virtually repealed by the Constitution of 1776, and that the right of appointment was no longer vested in the legislative power, but in the executive. It follows very clearly, that the Schedule of the Con¿titution of 1790, which continued the act of 1727, continued it, as it then stood, that is to say, with the exception of that part, which gave the appointment of the officers to the general assembly. It is therefore the opinion of the Court, without doubt, that by our present Constitution, the power of appointment is vested in the Governor.
2. But granting the power of appointment to be in the Governor, it is denied that he has the power of removal. This denial is founded on two reasons. 1. That the Constitution does not give the Governor the power of removal, even in cases where he has the express power of appointment. 2. That the tenure of this office, is, during good behaviour.
As to the tenure of ministerial offices in general, there can *461 be no doubt but it is during pleasure, unless the law by which the office is established, order it otherwise. This is not a new question. It engaged the attention of the Congress of the United States, soon after the formation of the federal Constitution, by which the President nominates and appoints by and with the advice and consent of the Senate. There was some plausibility in the argument, that the tenure of officers should be at the pleasure of the President and Senate, because the President could not appoint, without the consent of the Senate ; and the Constitution is silent as to the power of removal. Yet it was determined with general approbation, that the pleasure of the President was the tenure of office. A main reason for this opinion was, that the President being vested with the supreme executive power, was bound to carry the laws into operation, which can only be done through the intervention of officers. If these officers are not removable at his pleasure, he is relieved from that responsibility to which it is for the public good to hold him. An officer is not appointed for his own sake, but for that of the public. If he misbehaves, the sooner he is removed the better, because the country suffers every moment that he continues in office. It would be well, if every judicial officer could be removed in the moment of misbehaviour. But the public are deeply interested in their independence, and it is necessary, in order to secure that independence, that they should retain their offices until conviction. Every argument in favour of the President’s power of removal, applies a fortiori to the Governor of Pennsylvania; because he appoints without the controul of the Senate, and in him also is vested, the supreme executive power. There is no other person, at whose pleasure the officer can hold ; and therefore he must either be removable at the pleasure of the Governor, or hold during good behaviour; a tenure extremely injurious to the country, and contrary to all our habits, customs, and manner of thinking. Our ancestors brought no such law with them from the country from which they emigrated; nor did they see cause for adopting it afterwards; for never was it supposed in Pennsylvania, either before or since the revolution, that it was proper for ministerial officers to hold by any stronger tenure, than the pleasure of the persons from whom they receive their appointment, except in special cases where by law it was provided otherwise. This long continued *462 custom is powerful evidence of the law; particularly in the United States, where every freeman stands on the same proud footing, where offices are sought with avidity, and there is neither inclination to submit to executive oppression, nor danger in resisting it. The argument from custom, applies not only to ministerial officers in general, but to those offices of inspection in particular — for the Governor has exercised the power, both of appointment, and removal, ever since the adoption of our present Constitution. There can be no doubt, but many members of the Convention who framed it, were afterwards in the Legislature, yet we hear of no- attempt to make an appointment, nor any petition to that effect, from any candidate. — The conclusion is irresistible. — The law was considered as settled. — But as some arguments have been drawn from the act of 1727, in favour of a tenure during good behaviour, of the office immediately in question, I will consider their force. — The act authorises the mayor and any two aldermen, in case the officer shall by accident, be rendered incapable, or neglect to execute the office, or happen to die, to supply his place until the assembly shall appoint another. The mayor and aldermen, have no power to act, but in certain cases. This is all very well. The assembly did not choose to delegate power, but in cases of emergency. But where is the restraint on the assembly itself? There is none — on the contrary, the representatives of the people, who had frequent struggles with the Proprietary and his Governors, on this very subject of appointment to office, have in the present instance, adroitly contrived to keep the power in their own hands: for, having the express right of appointing in the specified cases, and the tenure of the office, not being limited to any particular time, it might well be contended, that the assembly might remove him at pleasure and appoint another, without consulting the Governor.
Upon the whole, it is the opinion of the Court, that Benjamin Reynolds was lawfully removed from office, and Daniel Bnssier lawfully appointed in his place.