THE PEOPLE OF THE STATE OF NEW YORK ex rel. WILLIAM H. SNYDER, Respondent, *v.* JOHN F. HYLAN et al., Appellants.

Public officers — Kings county — vacancies — creation, by constitutional amendment, of offices to be filled by election in first odd-numbered year — vacancies exist in such offices from time amendment takes effect, and may be filled by governor.

1. When a law establishing an office takes effect a vacancy in the office at once exists, unless the language of the law imports futurity of selection.

2. A constitutional amendment, adopted in November, 1913, to take effect January 1, 1914, increased the number of county judges in Kings county from two to four and provided that the additional judges should be chosen at the general election held in the first odd-numbered year after the adoption of the amendment. *Held*, that vacancies existed in such newly-created constitutional offices from the time the amendment took effect; that the governor was author-

ized to fill such vacancies by appointment in the same manner as like vacancies occurring in the Supreme Court (Const. art. 6, § 15); that the appointment of two judges to fill such vacancies on March 27, 1914, was valid, and that the judges so appointed are *de jure* county judges of Kings county.

*People ex rel. Snyder* v. *Hylan*, 163 App. Div. 219, reversed.

(Argued June 18, 1914; decided July 14, 1914.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered June 13, 1914, affirming a judgment in favor of plaintiff entered upon a verdict directed by the court in an action of quo warranto.

The facts, so far as material, are stated in the opinion.

*Louis Marshall, Charles J. McDermott, Clarence U. Carruth* and *Henry C. Turner* for appellants.   On January 1, 1914, two new county judgeships for Kings county came into existence — two new offices having been created by the amendment of section 14 of article 6 of the Constitution, by the affirmative action of the electors of the state at the election held in November, 1913. (*Whitman* v. *Nat. Bank*, 176 U. S. 559; *H. & S. J. R. Co.* v. *State Board*, 64 Mo. 294; *Forbes* v. *State*, 43 Atl. Rep. 626; *Sweet* v. *City of Syracuse*, 129 N. Y. 316; *Brown* v. *Mayor, etc., of N. Y.*, 63 N. Y. 239; *O'Brien* v. *Mayor, etc., of N. Y.*, 139 N. Y. 543; *People ex rel. Williams* v. *Dayton*, 55 N. Y. 367; Potter's Dwarris on Stat. & Const. 133; *People ex rel. Jackson* v. *Potter*, 47 N. Y. 349; *Prigg* v. *Pennsylvania*, 16 Pet. 612; Sedgwick on Stat. Const. 118.)   Two additional county judgeships having been created by this constitutional amendment, and no provision for the election of the incumbents until November, 1915, having been made, there existed a vacancy in these offices which it was within the power of the governor with the consent of the senate to fill.   (*State ex rel. Sanders* v. *Blakeman*, 104 Mo. 340; *Opinion of Justices*, 45

N. H. 590; *Stocking* v. *State,* 7 Ind. 326; *Cline* v. *Greenwood,* 10 Oreg. 230; *Walsh* v. *Comm.,* 89 Penn. St. 419; *People* v. *Opel,* 188 Ill. 194; *Matter of Collins,* 16 Misc. Rep. 598; *State ex rel. Brown* v. *McMillan,* 108 Mo. 153; *State* v. *Askew,* 48 Ark. 82; *State* v. *Irwin,* 5 Nev. 111.)

*Thomas Carmody, Attorney-General (Elon R. Brown, Harry E. Lewis* and *Hugo Hirsh* of counsel), for respondent. There was no vacancy in the offices of additional county judges in the county of Kings in March, 1914. (*People ex rel. Unger* v. *Kennedy,* 207 N. Y. 533.) The appointments were in violation of the provisions of the Constitution. (Const. of N. Y. art. 10, § 5; *People ex rel. W. E. & C. Co.* v. *Metz,* 193 N. Y. 148.)

Willard Bartlett, Ch. J. On March 27th, 1914, the governor appointed John F. Hylan and Robert H. Roy county judges of Kings county. On April 1, 1914, these gentlemen took and filed the constitutional oath of office and shortly afterward they entered upon the discharge of their judicial duties. This action was brought to test the validity of their appointment; and both at Trial Term and in the Appellate Division it has resulted in an adjudication to the effect that the governor's action in appointing them was without authority of law.

The appointments were made under the amendment to section 14 of article VI of the Constitution adopted at the general election in November, 1913. That amendment reads as follows, the italicized portions being new, and those in brackets having been excluded or altered:

"§ 14. The existing County Courts are continued, and the Judges thereof now in office shall hold their offices until the expiration of their respective terms. In the County of Kings there shall be *four* [two] County Judges [and the additional County Judge shall be chosen at the next general election after the adoption of this Constitu-

tion]. *The number of County Judges in any county may also be increased, from time to time, by the Legislature, to such number that the total number of County Judges in any one county shall not exceed one for every two hundred thousand, or major fraction thereof, of the population of such county. The additional County Judges in the County of Kings shall be chosen at the general election held in the first odd-numbered year after the adoption of this amendment. The additional County Judges whose offices may be created by the Legislature shall be chosen at the general election held in the first odd-numbered year after the creation of such office. All County Judges, including successors to existing Judges,* [The successors of the several County Judges] shall be chosen by the electors of the counties for the term of six years *from and including the first day of January following their election.     *     *     *"*

This amendment took effect on January 1, 1914. The courts below have held that the two additional county judgeships as offices came into existence on that date, but that they cannot lawfully be filled until incumbents are elected at the general election in 1915, being the first odd-numbered year after the adoption of the amendment. The governor, on the other hand, by making the appointments in question in this litigation, acted on the assumption that the vacancies existed as soon as the offices came into existence and that he was authorized to fill these vacancies " in the same manner as like vacancies occurring in the Supreme Court." (Const. art. VI, § 15.)

The general rule is that when a law establishing an office takes effect a vacancy in the office at once exists, unless the language of the law imports futurity of selection. Authorities to this effect are to be found in the decisions of the courts of last resort in Pennsylvania, New Hampshire, Indiana, Arkansas, Missouri, Oregon, Nevada, Georgia, Wyoming and West Virginia. Some of these cases will be considered presently. So far as I

have been able to ascertain the doctrine has been questioned only in Wisconsin and Mississippi.

In New York the point has not been directly passed upon by the courts; but, so far as it is possible for a rule of law to be established by practical construction, the rule which I have stated has been clearly, emphatically and unequivocally established in this jurisdiction, by the case of Erastus Cooke, who was appointed a justice of the Supreme Court by Governor Alonzo B. Cornell in 1880, under an amendment to the Constitution authorizing the election of an additional justice of that court in the second judicial district.

By that amendment, adopted in 1879, section 6 of article VI of the Constitution was made to read as follows:

"There shall be the existing Supreme Court, with general jurisdiction in law and equity, subject to such appellate jurisdiction of the Court of Appeals as now is or may be prescribed by law; and it shall be composed of the Justices now in office, *with one additional Justice to be elected as hereinafter provided,* who shall be continued during their respective terms, and of their successors. Existing judicial districts of the State are continued until changed pursuant to this section. Five of the Justices shall reside in the district in which is the City of New York, and five in the Second Judicial District and four in each of the other districts."

Immediately after this amendment took effect Governor Cornell requested the opinion of the attorney-general as to the manner of filling the office of the additional justice of the Supreme Court thereby provided for. The attorney-general at that time was Hamilton Ward, afterward a justice of the Supreme Court, of recognized ability, and one of the original members of the Appellate Division of the fourth department. In a carefully written opinion, dated January 17, 1880, he advised the governor that there was a vacancy in the office of justice of the Supreme Court in the second judicial district, created by the con-

stitutional amendment of 1879, and that under the pro-
visions of section 9 of article 6 of the Constitution, the
vacancy might be filled by appointment from the gov-
ernor, to continue until and including the last day of
December, 1880. Governor Cornell thereupon appointed
Erastus Cooke, who entered upon the discharge of the
duties of the office and continued to discharge them, with-
out question or objection in any quarter, until he was suc-
ceeded by Justice EDGAR M. CULLEN on the 1st of Janu-
ary, 1881. Judge COOKE was recognized as a justice of
the Supreme Court by the executive, legislative, judicial
and administrative departments of the state government.
The governor appointed him, the legislature made the
requisite appropriation for his salary, the comptroller
paid him, and the General Term and Court of Appeals
reviewed his decisions. "Where a particular construc-
tion has been generally accepted as correct and especially
when this has occurred contemporaneously with the adop-
tion of the Constitution and by those who had opportunity
to understand the intention of the instrument, it is not
to be denied that a strong presumption exists that the con-
struction rightly interprets the intention." (Cooley's
Constitutional Limitations [7th ed.], 102.) The language
of the constitutional amendment providing for two addi-
tional county judges in Kings county is so nearly iden-
tical with that of the amendment providing for an
additional Supreme Court justice in the second district,
under which Judge COOKE was appointed, that it is
impossible to distinguish between them in principle.
When the people voted upon the latter amendment, it is
to be presumed that they knew of the practical construc-
tion which had been given to the former amendment.
They knew that the governor had exercised the power of
appointment thereunder, and hence must be deemed to
have sanctioned the exercise of that power when they
adopted an amendment identical in phraseology except
that it related to two county judges instead of one justice

16

of the Supreme Court. If they had desired to negative the power of immediate appointment as to an original vacancy, they would have changed the language so as unmistakably to indicate such intention.

The legislative construction of the constitutional amendment under which Judge COOKE was appointed is further evidenced by chapter 4 of the Laws of 1880 enacted on the 5th of February in that year. This statute provided that when a new office is created more than three months prior to the next general election, the same should be deemed vacant from and after the date of its creation until it should be filled by election or appointment. It further provided as follows: "Whenever more than three months prior to the next general election provision is made for an additional incumbent of an office then existing, such office shall be deemed vacant as to such additional incumbent from and after the time when such provision shall take effect until the same shall be filled by election or appointment." (Section 2.)

While, of course, the legislative declaration that a vacancy existed in a constitutional office could not create such a vacancy, the existence of which must depend upon the language of the Constitution itself, nevertheless this statute is instructive as showing what the legislature deemed to be the fundamental law. It remained upon the statute book unchanged until repealed by the Public Officers Law (Laws of 1909, ch. 51) in 1909; but it was then substantially re-enacted in the following language: "When a new office or an additional incumbent of an existing office shall be created, such office shall for the purposes of an appointment or election, be deemed vacant from the date of its creation, until it shall be filled by election or appointment." (Public Officers Law, Cons. Laws, ch. 47, § 30, subd. 7.) It thus appears that when the people voted upon the constitutional amendment providing for two additional county judges in Kings county there was upon the statute book, and had been for more

than thirty years, a law which authorized the governor to treat a newly created constitutional office as vacant from the time of its creation and to fill it by appointment.

Furthermore, it is to be observed that the action of the judiciary in recognition of the appointment of Judge COOKE was in effect a judicial decision by every judge who participated in the review of his cases to the effect that his appointment was valid. The constitutional amendment of 1879 provided for an additional Supreme Court justice in the second district — for five justices instead of four. Unless the additional office was established when that amendment took effect every judicial act of Mr. Justice COOKE was absolutely void; for there could be no such thing as an office *de facto.* "There can be no officer *de facto* when there is no office to fill." (*Matter of Quinn,* 152 N. Y. 89.) The justices of the General Term when they assigned Judge COOKE to hold the various terms of the court which he held in the several counties of the second district thereby decided that he was *de jure* a justice of the Supreme Court. The same judges when they affirmed or reversed his orders or judgments in each case rendered a decision to the same effect; and so of the chief judge and associate judges of the Court of Appeals. We have, therefore, a series of judicial decisions extending over the greater part of a year, all of which directly and necessarily affirm the validity of Judge COOKE's title.

The precedent furnished by the *Cooke* case seems to me so powerful and conclusive an argument in favor of the validity of the appointments in question that I cannot understand why it was ignored in the courts below. The fact that the additional justices provided for by the Constitution of 1894 were not similarly appointed is not a precedent the other way, because that Constitution manifestly contemplated a complete new scheme for the judiciary which should not go into effect until the 1st of January, 1896. Besides, the negative failure to act can

never have the same significance as affirmative action, considered as a precedent.

But as has already been intimated, and independently of any precedent based on practical construction, the courts of most of the states in which the question has arisen have held that the creation of an original vacancy is involved in and coincident with the creation of an office.

In Pennsylvania the Constitution provides that the governor may fill any vacancy that may happen in any judicial or other elective office which he is or may be authorized to fill. In 1878 the county of Luzerne was divided pursuant to statute and the county of Lackawanna was erected therefrom. Upon the day when the establishment of this new county was proclaimed the governor appointed a county surveyor; and in a quo warranto suit to test his title to the office the question was presented to the Supreme Court whether at the time of such appointment the office of surveyor of Lackawanna county was vacant within the import of the Constitution. The court held that it was, saying that the word "vacancy" aptly and fitly describes the condition of an office when it is first created and has been filled by no incumbent. "The need to strain and torture terms," said Mr. Justice Woodward, "would lie in the opposite direction." (*Walsh* v. *Commonwealth ex rel. Evans,* 89 Pa. St. 419, 426.)

In July, 1864, the legislature of New Hampshire passed an act, to go into effect immediately, providing that "there shall be elected by the two branches of Legislature, in concurrence, during the present session, and in the month of June in each succeeding year, an officer to be styled Auditor of Accounts, who shall continue in office one year and until a successor be chosen duly and qualified." The statute contained the following provision as to vacancies: "In case of any vacancy in said office by death, resignation or otherwise, a successor shall be appointed

according to the above provisions: Provided that if such vacancy shall happen during the recess of the Legislature, such successor may be appointed by the Governor with the advice and consent of the council, and shall hold his office until a successor be chosen by the Legislature and qualified." No auditor was elected during the current session of the Legislature as the act prescribed, and the question arose whether an auditor could then be appointed by the governor with the sanction of the council. This question was submitted to the justices of the Supreme Court, as may be done in New Hampshire, and they answered it in the affirmative. (*Opinion* of Justices, *Matter of State Auditor*, 45 N. H. 590.) "There is now a vacancy in the office unquestionably;" they said in their opinion, "because the office has been created, and the law creating it is in force and the office is not filled, but is vacant. The term 'vacancy' means an empty space, a place unfilled, and when applied to an office, it means the state of being destitute of an incumbent or a want of the proper officer, to officiate in such office &ast; &ast; &ast; If a place is empty now, there is a vacancy, and it matters not whether it has once been filled, or whether it has always been empty. And so of an office."

A leading case which has perhaps been most frequently cited to the same effect is *Stocking* v. *State* (7 Ind. 326). The Constitution of Indiana authorized the governor to fill by appointment a vacancy in the office of the judge of any court. The legislature in the exercise of its constitutional power so to do created a new judicial circuit, but made no provision for the appointment of the new circuit judge by the governor. The Supreme Court of Indiana held that a vacancy in that office which the governor could fill "flowed as a natural consequence" from the action of the legislature in doing what it had the right to do — namely, establish a new circuit. "There is no technical nor peculiar meaning to the word 'vacant' as used in the constitution. It means empty, unoccupied; as

applied to an office without an incumbent. There is no basis for the distinction urged, that it applies only to offices vacated by death, resignation, or otherwise. An existing office, without an incumbent, is vacant, whether it be a new or an old one. A new house is as vacant as one tenanted for years, which was abandoned yesterday. *The emergency which created the office, would imply that the vacancy in the office of judge  \*  \*  \*  should be filled immediately.*"

In defining the meaning of "vacancy" as used in the State Constitution, the Supreme Court of Tennessee, in *State ex rel. Rambo* v. *Maloney* (92 Tenn. 62, 72), said: "There is a vacancy in every instance in which there is an office without an incumbent. Every office without an officer is vacant. Therefore, every new office created must of necessity be vacant from the time of its creation until it is filled by appointment or election."

The case of *Cline* v. *Greenwood* (10 Oregon, 230, 240) is particularly apposite as asserting the general rule and recognizing the weight of practical construction. The Oregon legislature enacted a statute providing that at the first general election an additional justice of the Supreme Court should be elected to serve for the term of six years " and until such full term the said vacant office shall be filled by the Governor." The court laid no stress on the legislative declaration that there was a vacancy in the office, saying: "If there was a vacancy it existed independent of that declaration. If there was no vacancy the legislature could not create one by a declaratory enactment. The vacancy flowed as a natural conse-quence from their doing what they had the right to do — to create a new judicial district. Yet the office the act created was elective, for the constitution required, as imperatively in that case as in this, that the justices of the supreme court should be 'chosen in districts by the electors thereof,' *but it was vacant, and the Governor was authorized to fill it until the electors expressed their*

*choice at the next general election.*  Nor was the constitutionality of that appointment, so far as we are advised, ever doubted or questioned.  The people acquiesced in it, and the courts and other departments of the State have recognized and treated it as legal and obligatory."

The statement in the last sentence quoted is just as true of the appointment of Erastus Cooke to be a justice of the Supreme Court in this state, under a constitutional amendment undistinguishable in principle from that under which the two additional county judges of Kings county have been appointed.

The importance of practical construction as evidence of the existence of constitutional power was vigorously emphasized by the Supreme Court of Missouri in *State ex rel. Henderson* v. *County Court of Boone Co.* (50 Missouri, 317) in upholding the validity of an act of the legislature establishing a probate court.  "These courts," it is said, "have been in full operation for many years, and have transacted a great deal of business, and are still transacting business.  Large investments have been made, and titles to property acquired and transferred, on the faith that these courts were legally established, and that their acts and proceedings were valid."  The constitutionality of such a law as was there assailed, it was asserted, has "received the sanction of this court in the many cases which have been brought here from those courts by appeal and writ of error, in which solemn judgments have been pronounced without objection, and which would be void if the court of original jurisdiction had no legal existence."

The general rule is asserted in a later Missouri case in which the court says: " We think that both authority and the spirit of our institutions favor the view that when an office is created, and no restrictions for filling the vacancy are imposed, a vacancy arises *ipso facto.*" (*State ex rel. Brown* v. *McMillan,* 108 Missouri, 153,

159.) So, in West Virginia, the word "vacancy" in legislation relating to an office has been held to apply to a newly-created office never yet filled, as well as to one which has had a former incumbent. (*State* v. *Scott*, 36 W. Va. 704.)

In *Matter of Fourth Judicial District* (4 Wyoming, 133) the statute under consideration created the office of judge of a new judicial district, and it was contended with much vigor that there could be no vacancy in the new office until it had once been filled by an incumbent. The court thought that the converse of this proposition was too clearly established to require discussion, saying: "An old office is vacated by death, resignation or removal. An office newly created becomes *ipso facto* vacant in its creation."

The question whether a vacancy can exist in an office which has never been filled has also been answered in the affirmative in *State* v. *Askew* (48 Ark. 82), *Gormley* v. *Taylor* (44 Georgia, 76), and *State ex rel. Clarke* v. *Irwin* (5 Nev. 111), in all of which the language used is similar to that already quoted. The further multiplication of authorities seems unnecessary.

As must already have been perceived, the foregoing considerations have led me to the conclusion that the appointment of the defendants was valid and that they are *de jure* county judges of Kings county.

The judgment should be reversed and judgment directed in favor of the defendants, with costs in all courts.

Werner, Chase, Collin, Cuddeback, Hogan and Cardozo, JJ., concur.

Judgment reversed, etc.