Robert E. Dempsey, J.
Petitioner moves to annul the nomination of Robert W. Cacace for the office of City Judge of the City of Yonkers to prevent the Board of Elections of Westchester County from placing Cacace’s name upon the official ballot on November 5, 1968 (the date of the next general election); and as incidental thereto, to void the action of the Democratic City Committee of the City of Yonkers in designating a committee on vacancies. The substance of the attack is crystallized in petitioner’s claim that there is no vacancy in the office of City-Judge which will exist as such on November 5, 1968 and that the procedural aspects followed by the Democratic City Committee in effecting the nomination were formless and without legal force and sanction.
The prologue was sparked by the enactment of chapter 946 of the Laws of 1968 which creates a fourth City Judge in the City of Yonkers. The bill was signed by the Governor and became law on June 22, 1968. . (Legislative Law, § 41.) The pertinent entitlement provides that it was amendatory “ to amend local law number twenty for the year nineteen hundred and sixty-one of the city of Yonkers * * * in relation to increasing the number of city court judges None of the parties in this proceeding question the legislative power to create the new position and the bill is well within the constitutional powers of the law-making body. (N. Y. Const., art. VI, § 17, subd. d.) Petitioner invokes as a premise for his position, the phraseology of the bill which states as follows: u § 3. This act shall take effect January first, nineteen hundred sixty-nine, except that the additional judges provided for in this act shall first be elected at the general election held in the month of November, nineteen hundred sixty-eight.” He urges that this language implies that a judgeship is not created until January 1, 1969, the effective date of the bill and that therefore, no vacancy will exist in the Yonkers judiciary on November 5, 1968 which can be filled at the general election. To achieve this result places a demand Upon the court to disregard the mandatory direction in the law that the additional judges 11 shall first be elected at the general election held in * * * November, nineteen hundred sixty-eight ”. Such a course of construction requires this court to emasculate a pertinent and substantial mandate of the Legislature. Comparable statements can be found in section 17 *698 of chapter 987 of the Laws of 1968, which act extensively expanded the judiciary of the State of New York in that the effective date is specified therein with the provision that certain positions shall be first filled by elective process at the general election in November, 1968. The duty of our courts to give effect to proper legislative enactments was ably defined in Lane v. Johnson (283 N. Y. 244, 257) where the Court of Appeals observed “ and the courts are not intrusted with authority to criticize the work of the Legislature or to refuse to give effect to a statute which by reasonable construction may be made to function in practical manner ”. This judicial policy declaration is but a restatement of section 91 of McKinney’s Consolidated Laws of New York, Statutes, which says “ When the meaning of a statute is clear, construction is unnecessary; in such a case, the duty of the court is to carry out the expressed legislative intent, not to read a different intent into the law by the aid of canons of construction ”. The law in question clearly creates a new judgeship in Yonkers. It provides for the election of a Judge at the November, 1968 election and further made such election and term of office effective on January 1, 1969.
That a vacancy was created on June 22,1968 by the enactment of the law is delineated by the terms of subdivision 2 of section 30 of the Public Officers Law, which provides ‘ ‘ When a new or an additional office shall be created, such office shall for the purposes of an appointment or election, be vacant from the date of its creation, until it shall be filled by election or appointment ”. Petitioner argues that there is no vacancy until January 1,1969 and hence he implies (but untenably) that an appointment should be made on January 1,1969 which could be transformed into an effective status at the next general election. This court finds that a vacancy was created when the bill became law (June 22, 1968) which vacancy was to be filled by legislative directive in November, 1968 and the operative effect of the term of the elected Judge commenced on January 1, 1969. The bill very definitely contains no intendment that there should be an appointment to the position as was decreed for certain judicial positions in the City of New York in section 17 of chapter 987 of the Laws of 1968. It would be a distortion for the courts to write in a power of appointment to the judicial post against the clearTanguage of the law specifying the manner in which the vacancy was to be filled.
In amplification and support of his argument that no vacancy will exist until January 1,1969, petitioner contends that the Election Law provides no machinery for political parties to make post primary nominations for the fall election. He stresses the *699 decision in People ex rel. Snyder v. Hylan (212 N. Y. 236). In this case, two new county judgeships were created by a constitutional amendment approved by the electorate at a general election held in November, 1913. The amendment, among other things, provided that it wonld take effect on January 1, 1914. However, in the amendment adopted there was crystal clear wording; to wit, ‘ ‘ the additional * * * Judges * * * shall be chosen at the general election held in the first odd-numbered year after the creation of such office The court affirmed the interim appointments, obviously thereby affirming the mandate of the bill that the vacancies were to he filled in the 1915 general election. Pertinent to the immediate case was the finding by the court that “ The general rule is that when a law establishing an office takes effect a vacancy in the office at once exists, unless the language of the law imports futurity of selection ” (p. 239). Transposing this expression to the instant case, it is clear that the selection of the City Judge was to he determined at the election in November, 1968 and that the office was to be filled by an elective process (rather than interim appointment) is expressed. This latter observation of election against appointment is well bracketed in the Hylan case when the court observed “ If they [the legislature] had desired to negative the power of immediate appointment as to an original vacancy, they would have changed the language so as unmistakably to indicate such intention ” (p. 242).
Reverting to petitioner’s argument of lack of machinery to facilitate proper nominations, this court finds that the action of the Yonkers City Democratic Party Committee in nominating respondent Cacace was validly and legally performed. Resort to the opinion of the Hon. Louis Lefkowitz, Attorney-General of the State of New York, published in the Neto York Law Journal July 16, 1968 (p. 1) in a reasonably comparable set of facts, provides a pertinent discussion of the applicable provisions of the Election Law. Section 131 of the Election Law entitled “ Party Nominations ” defines the method (subd. 7) to be used when a vacancy occurs after the primary date has passed. In substance it states that if the vacancy occurs after the spring-primary (Election Law, § 191, subd. 1-a) the party nomination shall be effected “ by a majority of the members of the county committee or committees last elected in the political subdivision in which such a vacancy is to be filled ”. This is re-emphasized as statement of the prevailing principle of law in 18 New York Jurisprudence (Elections, § 187). Judicially this procedure has received sanction in our Court of Appeals. In Matter of Gresser v. Cohen (275 N. Y. 440) it appears that after the primary *700 election was held the candidate thereat nominated declined the nomination. A squabble in the County Committee prevented a new nomination and under the party rules then existing in that party the executive committee made the designation. Rejecting the action of the rump session and affirming the post primary nomination through the accepted party machinery, the court said (p. 445): “ We have reached the conclusion that where a vacancy has occurred and the County Committee has failed to exercise its powers conferred by rule 14, to fill such vacancy, and is not in session, that the Executive Committee, under rule 10, possesses the power to fill such vacancy. Otherwise, one of the two dominant political parties would be in the position of not having a candidate upon the ballot for the office in which a vacancy has occurred, which would be contrary to the spirit and policy of our Government and the Election Law.” A similar expression of liberality of construction is found in Matter of Lauer v. Board of Elections (262 N. Y. 416) where the purported certificate of nominations was filed a day late with the Board of Elections in New York City. In affirming the lower court’s directive that the board should accept the certificate, the Court of Appeals commented (p. 410):
“ The Election Law should not be so interpreted as to defeat the very object of its enactment, which was to insure fair elections, an equal chance and opportunity for every one to express his choice at the polls. It also seeks to give the parties and independent nominators equal facilities to present their candidates and issues a reasonable length of time before election day.
“ So that no unforeseen occurrence should upset this scheme of the law, section 330 of the Election Law provides that the Supreme Court, or any justice thereof, may determine any question arising in respect to the nomination of any candidate and make such order as justice may require. An accident-may happen whereby a nominating certificate could not be filed on or before the last day. To reject such a certificate might make the election one-sided, with no party nomination in opposition. To determine what would be the right thing to do under such circumstances, power must be placed somewhere, and the Legislature has said that the Supreme Court is to determine what justice requires in such a case. If the courts cannot be trusted to exercise such power carefully, with guarded discretion, and in the interests of all the electorate, who can be trusted? ”
By way of comment on section 330 of the Election Law, this court notes that there is a caution to the courts to construe the matters therein contained “ liberally ”. Among the powers *701 vested in this court is the subject of the nomination of any candidate (§ 2), or the power to resolve the nomination of a candidate made otherwise than at a primary election.
This court determines that the nomination of the respondent Cacace was in full compliance with the law pertinent thereto. The petition is dismissed. No costs.