# Walsh *versus* Commonwealth ex rel. Evans.

1. Sect. 8, art. 4, of the constitution, provides that the governor " may fill any vacancy that may happen * * * in any judicial or in any other elective office, which he is or may be authorized to fill; * * * but in any such case of vacancy in an elective office, a person shall be chosen to said office at the next general election, unless the vacancy shall happen within three calendar months immediately preceding such election, in which case the election for said office shall be held at the second succeeding general election." *Held,* that when a new county is erected, a " vacancy" in the county offices " happens" withix the meaning of this constitutional provision.

[Walsh *v.* Commonwealth.]

2. The new county was erected August 21st 1878. The next general election was on November 5th 1878. *Held,* that no election for new county officers could be held until the second general election succeeding the erection of the county, and that the appointees of the governor were entitled to hold over until the commencement of the term of those chosen at said general election.

March 14th 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, WOODWARD, TRUNKEY and STERRETT, JJ.

Error to the Court of Common Pleas of *Lackawanna county :* Of January Term 1879, No. 219.

Quo warranto by the Commonwealth, *ex relatione* Richard Evans, against Patrick M. Walsh, to show cause by what authority he exercised the office of county surveyor of the county of Lackawanna.

The suggestion of Evans, filed January 22d 1879, averred that on November 5th 1878, the relator was duly elected according to law to said office of county surveyor, to serve for three years, from the first Monday of January 1879 ; but notwithstanding said election the respondent used and continues to use the franchises of said office, &c. The relator therefore prayed due process of law against the respondent, and that he be made to answer, &c. A rule on Walsh to show cause why a quo warranto should not issue against him having been made absolute, and the quo warranto having issued, the respondent filed an answer, wherein he averred that in accordance with the Act of April 17th 1878, entitled "An act to provide for the division of counties of this Commonwealth, and the erection of new counties therefrom," and the proceedings had as therein provided, and in accordance with the constitution and laws of this Commonwealth, the county of Luzerne was on the 21st of August 1878, divided, and the county of Lackawanna erected therefrom, with all the rights, powers and privileges of other counties of this Commonwealth. That by reason of the erection of said county of Lackawanna, a vacancy in the office of county surveyor of said county happened less than three months before the next general election, and Patrick M. Walsh, respondent, was on the 21st day of August 1878, appointed by the governor to be the county surveyor of Lackawanna county, to fill said vacancy, and duly commissioned, as appears by the copy of the commission issued by the governor to the respondent.

The respondent further saith that by virtue of said appointment and commission, he entered upon the discharge of the duties of said office, after having first duly qualified as required by law. That the respondent's term of office will not have expired until the end of the session of the senate of the Commonwealth of Pennsylvania, next following the date of the respondent's appointment, which session of said senate had not expired at the date of issuing the writ in this case ; and that the Commonwealth ought not to have

[Walsh v. Commonwealth.]

judgment, for the reason that by law the respondent is entitled to hold the office of county surveyor until his successor is duly elected and qualified, and that there can be no legal election for the office of county surveyor of the county of Lackawanna until the second general election succeeding the appointment of the respondent.

The Act of 1878 contains, inter alia, the following provisions:

" The governor shall immediately appoint and commission for the new county the necessary county officers, as provided by law, who shall perform the duties, have the power and be subject to the like qualifications as have county officers of this Commonwealth, and shall continue in office until the next general election and until their successors shall be duly elected and qualified.

" At the next general election after the erection of said new county, the qualified electors shall elect the said several county officers, as aforesaid mentioned, to hold their offices as is provided by law."

Section 8, article 4, of the constitution, provides that the governor shall have power to fill all vacancies that may happen in offices to which he may appoint, during the recess of the senate, by granting commissions which shall expire at the end of the next session ; he shall have power to fill any vacancy that may happen during the recess of the senate, * * * in a judicial office, or in any other elective office which he is or may be authorized to fill; if the vacancy shall happen during the session of the senate, the governor shall nominate to the senate before their final adjournment a proper person to fill said vacancy ; but in any such case of vacancy, in an elective office, a person shall be chosen to said office at the next general election, unless the vacancy shall happen within three calendar months immediately preceding such election, in which case the election for said office shall be held at the second succeeding general election.

On February 26th 1879 the relator demurred to this answer, and on the same day, at the request of the parties, judgment of ouster was entered pro forma, when the respondent took this writ.

L. Amerman, Stanley Woodward and J. H. Burns, for plaintiff in error.—We contend that all appointments made by the governor to fill vacancies in elective offices must necessarily be made in conformity with the constitutional provision. The section of the Act of April 17th 1878, clearly confers upon the governor the power of appointing the new county officers. The way in which this power can be exercised by him is regulated by the constitution, and the term of the appointed officer and the time of choosing his successor, are so clearly and definitely fixed, that there is no room nor power for statute regulation. We believe that in this case the statute and constitution may be harmonized ; but we say if there be a conflict, the statute must give way. The vacancy in this case having

occurred less than three months previous to the general election, no successor to the respondent can be legally chosen till the second succeeding general election. Those who object to this view of the case, say that the respondent was not appointed to fill a vacancy that happened, but to an office created by the new county act, and that therefore the appointment does not come within the constitutional regulation. To this we answer that the office in question is not a created office within the meaning of the term, and even if it were, so far as this case is concerned, there is no difference between a vacancy caused by the creation of an office and one produced by death or resignation.

The question turns upon the construction of the word " vacancy," not on the word "happen." The usual words of limitation " by death," "resignation," "otherwise," &c., are not added to the word "happen." " Vacancy," therefore means any vacancy in any of the offices enumerated.

The constitution, article 14, sections 1 and 2, designates who are county officers. An officer implies the existence of an office. A county without officers cannot exist under our constitution. It is idle to argue that an office corresponding with every officer enumerated in the constitution does not exist in every county in the state. When Lackawanna county was erected, it was invested with all the rights, powers and privileges, *and with all the offices* of other counties of this Commonwealth. On the 21st day of August 1878, the first day of its existence, these several county offices were without incumbents. They were vacant in every sense of the word. What is a " vacancy ?" Webster says it is " the state of being destitute of an incumbent; a place, or office not occupied, or destitute of a person to fill it." " From *vaco, vacans,* to be empty." Worcester : " The state of a post, office or employment when destitute and wanting an incumbent; a place or office which is empty and not filled." Johnson : " State of a post when it is unsupplied." Bouvier : " A place which is empty." Judge Marcy in People *v.* Green, 2 Wendell 273, says : " It has been sometimes applied to the office as contradistinguished from the term of service, and at others, to the term of the office. I understand it as applicable to the office alone."

When the governor has power to fill vacancies we contend that it applies as well to places, which have never before been occupied, as to a place which has been previously occupied. There is no valid distinction between an office never filled and an office vacant because empty. Again, the act creating Lackawanna county did not create the office of surveyor. This office was created by the existing law. It existed by virtue of the county. When a new county is created the constitution attaches to it the necessary county offices, and unless there be some express provision that the duties of the office shall, for the time being, be performed by some other officer, then these

[Walsh v. Commonwealth.]

offices are vacant, and the vacancy is such an one as the constitution intended to provide for: Stocking v. State, 7 Indiana 329 ; Collins v. State, 8 Id. 344 ; Biddle v. Willard, 10 Id. 63 ; People v. Parker, 37 Cal. 650 ; State ex rel. Attorney-General v. Irwin, 5 Nevada 111; State v. Adams, 2 Stewart (Ala.) 231; Gormley v. Taylor, 44 Georgia 79 ; Giles v. Russ, 49 Id. 115 ; Dillon on Municipal Corporations, sect. 161, note 4 ; 14 Opinions U. S. Attorney-General 2.

It is also claimed by the other side that section 2, article 14 of the constitution, which provides that " all vacancies not otherwise provided for shall be filled in such manner as may be provided by law," was intended to and actually does leave appointments to fill vacancies in county offices, subject entirely to regulation by statute, and that the new county act being the latest statute on the subject, so far as this case is concerned, it repeals all other statutes that conflict with it, and stands without any constitutional limitation whatever in regard to appointments. In our opinion this provision in no way alters or affects the powers and limitations in regard to appointments made by the governor, but was intended solely to allow the legislature to vest the power of appointment of county officers in other hands than those of the state executive, if they saw fit.

*H. M. Edwards, E. Merrifield* and *H. W. Palmer*, for defendant in error.—The constitutional provision refers solely to vacancies that may happen to an existing office. It contemplates that the office has once been filled: Sergeant's Constitutional Law 373.; McCrary's Law of Elections 237.

That there are two kinds of vacancies contemplated in the constitution, is shown by the provision contained in section 2, article 14, where is found, " all vacancies not otherwise provided for, shall be filled in such manner as may be provided by law." The vacancies provided for in section 8, article 4, are such as occur from death, resignation, promotion or removal. In the case in controversy, the vacancy did not come by chance ; it was created ; it was the act of the people, and the very power that enabled them to act, provided at the same time how the offices should be filled, and for how long a time ; clearly coming within the provision of article 14, section 2, and being one of the vacancies not otherwise provided for. That this section 8, article 4, has a limited meaning, so far as the word " vacancy " is concerned, is decided in the case of Commonwealth v. King, 4 Norris 103, which rules this case. This is an elective office, and no vacancy can exist therein until an election has once been had. This was not a vacancy in an existing term, in an office that had been regularly filled by the major power of the people. All county officers must be elected by the people, and there can be no such thing as applying the constitutional provision to extend the term of appointees, who are not made to fill the term of a regularly

[Walsh *v.* Commonwealth.]

elected officer. It was not a vacancy that in the legal acceptation of the term, "happened." The word "happen," limits the power to cases where there has been an incumbent.

There is no intention in the constitution to fix a time of notice for holding elections to three months. The provision is simply for vacancies that happen within existing terms, to offices that have been regularly filled. It certainly was not meant to take from the people of Lackawanna county the right to elect their officers, which, under the respondent's view, it would do; because if the office of surveyor should become vacant within three months of the next election, the appointee would hold over, and so under similar conditions indefinitely.

Mr. Justice WOODWARD delivered the opinion of the court, March 31st 1879.

On the 17th of April 1878, the "Act to provide for the division of counties of this Commonwealth, and the erection of new counties therefrom," was passed. Proceedings to promote the division of the county of Luzerne, and the erection of the county of Lackawanna were at once begun. These proceedings were perfected on the 21st of August 1878, when the governor declared by proclamation that a majority of the votes cast at the election held under the terms of the act, on the 13th of August 1878, had been in favor of the creation of the new county, and that thenceforth, in the words of the 9th section, "said new county was established, with all the rights, powers and privileges of other counties of this Commonwealth." In the 11th section, the governor was required immediately to appoint and commission the officers for the new county, who should continue in office until the next general election, and until their successors should be duly elected and qualified. Patrick M. Walsh, the defendant in this quo warranto, was appointed surveyor the day the establishment of the new county was proclaimed.

At the general election, held on the 5th of November 1878, the relator, Richard Evans, received a majority of the votes cast for county surveyor. The term for which the defendant was commissioned was "until the end of the next session of the senate," and he resisted the relator's claim to the office, because, as he alleged, the election of county officers at the general election of 1878 was undue and illegal. The ground was taken that it had been held in violation of section eighth of the fourth article of the constitution, declaring that "in any case of vacancy in an elective office, a person shall be chosen to said office at the next general election, unless the vacancy shall happen within three calendar months immediately preceding such election, in which case the election for said office shall be held at the second succeeding general election." Less than three calendar months intervened between

the date of the defendant's commission and the date of the election. Insisting that the office of surveyor was vacant when he was appointed, the defendant asserted his right to retain it until the final adjournment of the session of the senate in 1879. The relator, on the other hand, denied that he was such an elective officer as was contemplated in the constitutional provision. He contended that the design of the legislature in the 11th section of the act was to bridge over the interval between the creation of the county and the next election, by directing the governor to appoint new officers, instead of directing that their duties should be performed by the existing officers of the county of Luzerne. He relied on the second section of the fourteenth article of the constitution, requiring that " all vacancies not otherwise provided for, shall be filled in such manner as may be provided by law." Invoking that direction as one of the grounds to support his claims, he began this proceeding to obtain possession of the office, and prosecuted it to a judgment, pro forma, of ouster against the defendant.

Was the office of surveyor of the county of Lackawanna vacant, in the constitutional import, on the 21st of August 1878 ? The verb " to vacate," in its English form, has acquired an active sense through a long period of transition, by popular usage and in consequence of its early adoption as a technical and legal term. " To leave empty;" " to cease from occupying;" " to annul;" " to make void," undoubtedly express the different meanings in which, as a verb, the word has come to be employed. But it does not follow that its derivatives have acquired exclusively equivalent meanings in popular, or legislative, or legal usage. In its original Latin form, the word was invariably used to define the state and condition of some existing thing at some particular point of time. It had no transitive power whatever. It meant " to be empty, void or vacant;" " to be void of, free from or without, to lack or want a thing." Vacant lands were described as lands that were " uninhabited or uncultivated." The Roman law gave the word precisely the same meaning. Vacant possessions were defined by Ulpian, in the Pandects, to be such as were " free, unoccupied, ownerless :" Dig. 38, 17, 2. And many of the derivatives from the English verb retain the exact meaning of the original Latin word. To be " vacant," in its primary sense, is " to be deprived of contents; empty; not filled." The first definition of " vacancy," is " the quality of being vacant; emptiness." The words " vacant lands," so familiar in the Pennsylvania courts, convey as to description of subject-matter, the precise idea which Cæsar conveyed in explaining the public policy of the Suevi. Surrounding their own territories they desired, to as wide an extent as possible, *vacare agros.* De B. Gal. IV. 3. Usage has warranted the employment of these words in an enlarged and broader sense, but the primary and strictly grammatical meaning which they still retain is identical

[Walsh *v.* Commonwealth.]

with their exclusive original signification. The result is that the word " vacancy " aptly and fitly describes the condition of an office when it is first created and has been filled by no incumbent. The need to strain and torture terms would lie in the opposite direction.

Was the claim of the relator sustainable on other grounds? When the defendant was commissioned, executive, legislative and popular action had established the county of Lackawanna, and with it the office of surveyor. It was an existing unfilled elective office. The duty of the governor to fill it was clear. He derived his original power to appoint from the constitution, and that had authorized him to issue a commission in the event of a vacancy in any elective office. It is true the statute had directed him to appoint the officers of Lackawanna; but without that direction, if the offices had been established by special enactment, it would still have been his constitutional duty to issue the commissions. The eleventh section directed that the officers appointed by the governor should retain their places until the next election, and until their successors should be duly elected and qualified. Due election and qualification could only result from action in accordance with the constitution and existing laws. If the county had been organized before the 5th of August 1878, the legality and regularity of the election on the 5th of November would have been unquestionable. But until the 21st of August it was uncertain whether the county would ever have existence at all. The proclamation changed what had been a project into a vital actuality. The moment the life of the county began, there came into being the several county offices specified in the first section of the fourteenth article of the constitution. They were not places to be filled by clerks, or agents, or deputies, *pro hac vice.* They were elective offices and they were vacant. All the conditions under which the constitutional duty of the governor to select incumbents subsisted. Is it possible that in view of such conditions, the legislature could have the power, even if they had so intended, to take these offices out of the operation of the constitutional provision? But they could have had no such intention. When the act was passed, it was as uncertain that the organization of the county would be perfected three months after the next election, as it was that it would be perfected three months before. And on what principle can the second section of the fourteenth article apply in any way to this question? They were " vacancies not otherwise provided for," which were to be " filled in such manner as should be provided by law." But these vacancies were such as had been provided for. They were vacancies in elective offices which the governor had power to fill. The provisions of the Act of the 17th of April 1878, must be construed in its connection with the provisions of the constitution, and the officers of the county of Lackawanna must stand on the same footing as if their places had previously been occupied, and they had succeeded to them by

appointments to supply vacancies produced by causes of ordinary and familiar kinds.

It was strongly urged at the argument that no ground of reason or convenience existed in this case to justify an interference with the right of the people to elect their officers in the autumn of 1878. It was said that there was ample time after the proclamation to select candidates, and to provide that the rights of parties, individuals and the community should be secured from hazard. If this court had the power to say this, it is possible that this suggestion would be adopted. It is true that all formal details relating to assessments, revision of lists, the furnishing of ballot-boxes and blanks, and the notice to be given by the sheriff, could have been arranged in this interval of seventy-six days. But cases might occur where the interval would be forty, thirty, twenty or ten days. And it would be necessary to go into an inquiry in each instance into the adequacy of time to prepare for the election. To guard against a shifting rule like this, fortunately for the community and the courts, the constitution has established an abiding and pervading system. It was the opinion of its framers that the work of selecting officers for the government of the Commonwealth, and of the counties of the Commonwealth, should be carefully and thoughtfully done. Haste, impulse and evil temper will enter into political contests, whatever safeguards may be thrown around the ballot, and whatever may be the period allowed for deliberation. But the constitution has established the unbending rule that three full months shall be the period within which to prepare for an election to supply a vacancy, and during which mistakes may be corrected, prejudices may be overcome, ignorance may be enlightened, excitement may be allayed, and passions may subside. It has not been suggested that this election resulted in the choice of a surveyor who was not entirely competent, and did not possess every requisite qualification for the duties of the position. But it has sometimes happened that in haste, and under the influence of prejudice, very important offices have been filled, not only by very incompetent, but by very bad men.

It has not been thought necessary to encumber this opinion with quotations from the authorities bearing on this question. They are overwhelmingly preponderant in favor of the position of the defendant, and have been marshalled with great ability in his counsels' original and supplemental briefs. Indeed, in this connection, the court have pleasure in acknowledging the benefit they have derived from the careful, skilful and thorough preparation of this cause by the counsel for both the parties. A single remark in regard to each of the cases of The Commonwealth v. Swift, 4 Whart. 186; Broom v. Hanley, 9 Barr 513, and The Commonwealth v. King, 4 Norris 103, needs only to be made. The only point ruled in the first was, that the constitution of 1838 did not create a vacancy in

[Walsh *v.* Commonwealth.]

the office of recorder of deeds, and that the power remained in the governor to appoint under the constitution of 1790 until the general election in 1839. In the second, it was decided that the death of a person elected to fill the office of clerk of the Orphans' Court before he had qualified himself, according to law, did not create a vacancy, but the incumbent who was commissioned to fill the office until his successor should be qualified, held over. In the third case, the sheriff of McKean county died about three weeks before the general election of 1875, in the third and closing year of his term; and as the people of the county could have devoted the whole of the three years to preparation for the election of his successor, it was held of course, that the appointee of the governor could retain the office only to the time when the new term began in January 1876. Nothing decided in either of those cases touches the points in issue here.

The judgment of ouster is reversed at the costs of the relator: and it is now ordered, adjudged and decreed that judgment on the demurrer in favor of the defendant be forthwith entered: and it is further ordered, adjudged and decreed, that the said defendant recover his costs of said relator, to be levied by execution, as in cases of debt.

Justices MERCUR and GORDON dissented.