### Branch v. Berger et al.

*Public officers—Compensation—Appointment to vacancy—Clerk of Quarter Sessions—Act of June 29, 1923.*

1. An appointee to fill a vacancy in a public office is entitled to the salary provided by the law in force at the time of his appointment.

2. There is no law forbidding the Governor to appoint one to fill a vacancy in a public office which has been caused by the appointee's resignation.

3. In such case, the courts cannot examine into the motive of the appointment by the Governor.

4. The Clerk of Quarter Sessions, who had assumed office in January, 1922, when the fee system prevailed, resigned after the passage of the Act of June 29, 1923, P. L. 944, which placed the office upon a salary basis, and was immediately appointed by the Governor to fill the vacancy created by his own resignation: *Held*, that he did not fall within the constitutional provision forbidding the increase of emoluments of public officers after their election or appointment, and was entitled to the salary provided by the act.

Bill for injunction. C. P. Carbon Co., June T., 1924, No. 1.

*William G. Thomas*, for plaintiff.

*Frank X. York, James Smithan, James M. Breslin* and *J. C. Loose*, for defendants.

RENO, P. J., 31st judicial district, specially presiding, July 17, 1924.— Eugene V. Kuehner was elected Clerk of the Courts of Oyer and Terminer and Quarter Sessions in November, 1921. He assumed office in January, 1922, when the compensation of that office was provided by a system of fees. After the passage of the Act of June 29, 1923, P. L. 944, which places that office upon a salary basis, he resigned and Governor Pinchot immediately appointed him to fill the vacancy created by the resignation.

Branch *v.* Berger et al.

Kuehner now claims the salary provided by the Act of June 29, 1923. His right thereto is challenged by the complainant, who, as a taxpayer, has filed a bill in equity, wherein he alleges that, in order to secure to Kuehner the salary aforesaid and to defeat and evade that provision of the Constitution forbidding a change in the salary or emoluments of a public officer subsequent to his election, Kuehner and Governor Pinchot "agreed and confederated together to adopt and place in operation a plan or scheme specifically designed to defeat and evade the said constitutional provision." He further avers that the scheme was that Kuehner should resign, that the Governor should accept his resignation and immediately thereafter appoint him to fill the vacancy for the balance of his unexpired term. He prays for a decree restraining the county commissioners from issuing, and the county treasurer from paying, warrants for the salary and Eugene V. Kuehner from receiving or collecting the same. The case is before us upon Kuehner's demurrer.

An appointee to fill a vacancy is entitled to the salary provided by law in force at the time of his appointment: McKinney *v.* Northumberland County, 75 Pa. Superior Ct. 581. No law forbids the Governor from appointing one to fill a vacancy which has been caused by the appointee's resignation. Hence, it would seem that such appointee is entitled to the salary in force at the time of his appointment. This conclusion would, if the case required its pronouncement, seem to be supported by an inspection of the constitutional provision (article III, section 13), which, while forbidding increases of emoluments of public officers after their election or appointment, does not prohibit an increase during the term for which they are elected or appointed.

Complainant does not controvert this conclusion. He does not allege that the appointment violates constitutional or statutory law. He does not base his claim to relief upon the broad ground that Kuehner cannot secure an increase of emoluments during the period of years covered by the term for which he was elected. Indeed, both his oral argument and his written brief concede that, apart from the element of conspiracy, Kuehner is entitled to the salary. But he does contend that the Governor and Kuehner conspired and that, as a result of that conspiracy, the constitutional provision which was designed to prevent officers from securing increased emoluments after their election has been defeated and evaded. However, if that provision does not forbid an increase of the emoluments to one appointed to fill a vacancy, and if the vacancy can be filled by appointing the one who created it, it is difficult to understand how a conspiracy can exist. A conspiracy is a combination of two or more persons, by some concerted action, to accomplish an unlawful purpose: Bausbach *v.* Reiff, 244 Pa. 559. If, then, the end to be accomplished is not forbidden by law, either constitutional or statutory, a combination to effect that end by means that are lawful is certainly not a conspiracy. Certainly, we cannot denounce as a conspiracy a combination which attained a lawful end merely because there was an agreement to attain that end by using only lawful means.

Passing that, however, it is apparent that the bill contemplates an investigation and examination of the motives which prompted the Governor to appoint Kuehner. That is, the court is to ascertain the Governor's motives in appointing Kuehner. If it discovers that the Governor appointed Kuehner so that Kuehner could secure a salary fixed by an act passed after his election, but before his appointment, it is to denounce the appointment, hold that the appointment is fraudulent, that the commission issued by the Governor is void because tainted with the fraud, and that, as a final result, the appointment being void, Kuehner still holds office by virtue of his election and must

be satisfied with the fees accruing to him under legislation then in force. That is, indeed, a compressed statement of complainant's argument, which, although eloquently and ably urged, is not supported by either authority or reason.

The functions of government are exercised by three separate, distinct, equal and co-ordinate departments. Each derives its power from the people, and each is responsible to the people for the exercise of it: De Chastellux v. Fairchild, 15 Pa. 18. In the exercise of the powers assigned to the respective departments of the government, they are independent of control by another department except as the Constitution authorizes that control. The power of appointing officers is conferred upon the Governor by the Constitution (article IV, section 8) and the laws enacted in pursuance thereof. Excepting only those requiring the confirmation of the Senate, no other department is authorized to examine the appointments thus made. This power of appointment is to be exercised by the Governor according to his own discretion: Cf. Marshall, C. J., in Marbury v. Madison, 1 Cranch, 137; 2 U. S. (Law Ed.) 60. An appointment to an official position is not a mere ministerial act, but one involving the exercise of judgment. The appointing power must determine the fitness of the appointee and, having determined that question by making the appointment, the courts are without power to revise that judgment: Keim v. United States, 177 U. S. 290. Of course, if the statute creating the office prescribes the qualifications necessary to authorize an appointment, the courts have power to declare void the appointment of one not possessing the qualifications: People v. Galbraith, 163 Mich. 47; 127 N. W. Repr. 771; Cf. McKay-Smith v. Philadelphia, 54 Pa. Superior Ct. 257. Or if the Governor appoints an officer to fill a vacancy, a court may determine whether in fact such vacancy exists: Walsh v. Com., 89 Pa. 419. But, without attempting to define exactly the boundaries of the judicial power to pass upon executive acts, we may positively affirm that the power does not extend to an examination of the motives which prompted an appointment and to predicate judgment upon the results of that examination.

If Hartranft's Appeal, 85 Pa. 433, is not decisive of the facts of the case at bar, at least the doctrine of the case is applicable. There, in the majority opinion, it was said by Mr. Justice Gordon: "We had better, at the outstart, recognize the fact that the executive department is a co-ordinate branch of the government, with power to judge what should or should not be done within its own department, . . . and that with it, in the exercise of these constitutional powers, the courts have no more right to interfere than has the executive, under like conditions, to interfere with the courts." Even the dissenting opinion recognizes this principle, for Chief Justice Agnew prints this *dictum* in italics, "the judiciary cannot control or interfere with the discretion of the Governor in the exercise of an executive function."

Since the complainant relies upon no other ground for relief but one involving a review of the motives which induced the Governor to appoint Kuehner, there is no ground upon which his bill can be sustained. Hence, not only the demurrer is sustained, but the bill itself is dismissed.

Now, July 17, 1924, this case came on to be heard at this term and was argued by counsel, and upon consideration thereof it is ordered, adjudged and decreed that the demurrer be sustained for the reasons set forth in the foregoing opinion, and that the bill be dismissed, with costs to the respondent.

The prothonotary will enter this decree *nisi* and give notice of same to the parties or their counsel, and if no exceptions are filed within ten days, this decree shall be entered by him as a final decree.