HILLMAN *v.* BOONE ET AL.

[No. 1, October Term, 1948 (Adv.)]

*Decided, per curiam, April 2, 1948.*

*Opinion filed May 25, 1948.*

The cause was argued before MARBURY, C. J., DELA-
PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Noah A. Hillman* for the appellant.

*Hall Hammond, Attorney General,* and *J. Edgar Harvey, Assistant Attorney General,* with whom were *Matthew S. Evans, R. G. Hoffman, Armstrong, Machen & Eney, Charles C. W. Atwater* and *C. E. Hogg* on the brief, for the appellees.

MARKELL, J., delivered the opinion of the Court.

This is an appeal from an order dismissing, on demurrer, a petition for a writ of mandamus to require the election officials to recognize appellant as a candidate for nomination for the office of Associate Judge of the Fifth Judicial Circuit in the primary elections in May, 1948, and to place his name on the ballots in those primary elections.

The question presented is whether, under Article 4, section 5, of the Constitution, as now in force, a judge of the Fifth Circuit is to be elected in 1948. Art. 4, Sec. 5, provides: "Upon *every occurrence or recurrence of a vacancy* through death, resignation, removal, disqualification by reason of age or otherwise, or expiration of the term of fifteen years of any judge, or *creation of the office of any judge, or in any other way,* the Governor shall appoint a person duly qualified to fill said office, who shall hold the same *until the election and qualification of his successor;* [except that when a vacancy shall exist in the office of Chief Judge of the Supreme Bench of Baltimore City, the Governor may designate an Associate Judge of said Supreme Bench as Chief Judge of said Supreme Bench, and such appointee as Chief Judge shall hold such office for the residue of the term for which he was last elected an Associate Judge of said Supreme Bench.] *His* successor shall be elected at the first biennial general election for *Representatives in Congress* after the expiration of the term of fifteen years (if the vacancy occurred in that way) or the first such general election *after one year* after the occurrence of the vacancy in any other way than through expiration of such term. Except in case of reappointment of a judge upon expiration of his term of fifteen

years, no person shall be appointed who will become disqualified by reason of age and thereby unable to continue to hold office until the prescribed time when his successor would have been elected." (Italics and brackets supplied. Bracketed portion was added by amendment proposed by Act of 1945, ch. 703 and ratified at the 1946 election; remainder constitutes section 5 amended as proposed by Act of 1943, ch. 772 and ratified at the 1944 election, effective January 1, 1945. Italicized words were not contained in corresponding provisions of section 5 before 1944 amendment.)

Judge Melvin died on December 14, 1945. In 1946 Judge McWilliams was appointed his successor as a judge of the Fifth Circuit. Constitution, Art. 4, secs. 5, 21. Judge McWilliams resigned as of March 1, 1948. Judge Anderson was appointed his successor and qualified on March 9, 1948. Under section 5 Judge Anderson is to hold office "until the election and qualification of his successor. *His* successor shall be elected" at the first biennial Congressional election *"after one year* after the occurrence of the vacancy". Appellant contends that: "the occurrence of the vacancy" was at Judge Melvin's death, not at Judge McWilliam's resignation; there was "a recurrence of the vacancy" at Judge McWilliam's resignation; but "the occurrence of the vacancy" does not include "every occurrence or recurrence of a vacancy"—only the first "occurrence" of a vacancy, not any subsequent "recurrence". We think this contention is contrary to the plain meaning of the words, and the evident purpose, of the 1944 amendment.

"Recur" means "occur again". In this context, "every occurrence or recurrence" means every first or subsequent occurrence. In section 5 the first sentence gives to "the occurrence of the vacancy" in the second sentence the broadest possible definition, both as to (*a*) number, *"every occurrence or recurrence"*, and (*b*) nature, "through death, resignation, removal, disqualification by reason of age or otherwise, [or expiration of the term of fifteen years] of any judge, or *creation of*

*the office of any judge or in any other way"*. The italicized words were new in the 1944 amendment. It has been questioned whether "vacancy", without definition, would include a newly created office. *Delehanty v. Britt,* 163 App. Div., N. Y., 736, 149 N. Y. S. 97; *contra, Richardson v. Young,* 122 Tenn. 471, 125 S. W. 664; *Walsh v. Commonwealth,* 89 Pa. 419, 33 Am. Rep. 771. On the other hand, there would be no occasion to mention "recurrence" of a vacancy if a judge then appointed were not, like every other appointed judge, subject to the minimum period for election of *his* successor. The power to appoint upon recurrence of a vacancy is not new, but the tenure is. "The occurrence of the vacancy" in the second sentence refers to the whole, not part, of the definition in the first sentence. The two sentences are co-extensive. Shortly stated, the first provides that upon *every* occurrence of a vacancy in any way, a judge shall be appointed, to hold office until the election and qualification of *his* successor; the second provides, that *his* successor shall be elected *after one year* after the occurrence of the vacancy.

The effect and purpose of the amendment is also clear. By making the provision for appointments to fill vacancies all-inclusive and providing for biennial, instead of quadrennial elections, but only after one year after the latest vacancy, the electorate at every election are given, approximately, at least one year and less than three of experience with an appointed sitting judge, instead of none at all or any period less than four years. This purpose is not impaired by making the occurrence of the vacancy the point of time and ignoring such accidents as delays in appointment or qualification and the variation in the date of election day.

The meaning and purpose of the 1944 amendment, with respect to the question now presented, are confirmed by the history of section 5 as previously in force. In the original Constitution of 1867 section 5 read: "After the election for Judges, to be held as above mentioned, upon the expiration of the term, or in case of the death, resig-

nation, removal, or other disqualification of any Judge, the Governor shall appoint a person duly qualified to fill said office, who shall hold the same until the next general election for members of the General Assembly, when a successor shall be elected, whose tenure of office shall be the same, as hereinbefore provided; but if the vacancy shall occur in the City of Baltimore, the time of the election shall be the fourth Wednesday in October following." In 1882 many of the judges elected in 1867 had served their full term of fifteen years. Instead of appointment of their successors until the 1883 election, the amendment proposed by the Act of 1880, ch. 417, and ratified at the 1881 election provided for an election for judges in 1882 [1867] and "in every fifteenth year thereafter", but retained provision for appointment upon the expiration of the term of any judge "elected to fill a vacancy". In the 1881 amendment section 5 read: "After the election for Judges, as hereinbefore provided, there shall be held in this State, in every fifteenth year thereafter, on the Tuesday after the first Monday in November of such year, an election for Judges as herein provided; and in case of death, resignation, removal or disqualification by reason of age or otherwise of any Judge, the Governor shall appoint a person duly qualified to fill said office, who shall hold the same until the next General Election for members of the General Assembly, when a successor shall be elected, whose term of office shall be the same as hereinbefore provided, and upon the expiration of the term of fifteen years for which any Judge may be elected to fill a vacancy, an election for his successor shall take place at the next General Election for members of the General Assembly to occur upon or after the expiration of his said term; and the Governor shall appoint a person duly qualified to hold said office from the expiration of such term of fifteen years until the election and qualification of his successor." In 1897 a few judges, and in 1912 still fewer, were elected at the expiration of successive full terms from 1867. As succession of such full terms came to an end, the difference in operation between the 1881

amendment and the 1867 provision disappeared. In 1922 the quadrennial elections amendment reverted to the 1867 provision for appointment at the expiration of any full term. Art. 17, sec. 5. Thus the 1944 amendment, as compared with the 1867 provision and the 1881 amendment, shows the same policy of appointment before election and also shows the extension of that policy so as to cover the question in the case at bar. The policy in the 1867 provision was temporarily narrowed in the 1881 amendment; the 1881 change became extinct in the course of time and was formally abolished in 1922; in 1922 the maximum possible service of an appointed judge was extended to approximately four years. The 1944 amendment extends the original 1867 policy by establishing a uniform minimum of approximately one year of service of an appointed judge, and also reduces the maximum from four years to three.

Appellant asserts that before Judge McWilliams's resignation became effective he filed his certificate of candidacy and thereby created a "contest", which cannot be "frustrated" by Judge McWilliams's resignation. This is a pointless contention. A candidate for office cannot acquire under the election laws a right contrary to the constitution. Appellant also asserts that, unless his contentions are approved, a succession of appointments, resignations, appointments and resignations may be prolonged *ad infinitum* without any election at all—even by appointing the same person to fill the "vacancy" created by his own resignation. If the last mentioned situation should ever arise, it will then be time to decide whether such an interruption in continuous service constitutes a "vacancy". We see no reason to assume or expect that by collusion the appointing power would be abused, not to fill but to create vacancies, and judges would accept appointments, not to hold but to resign office.

As we find no ambiguity in the words of section 5, it is unnecessary to consider whether, in case of ambiguity, the reports of the Commission on the Judiciary Article of the Constitution, generally known as the Bond Commission, would furnish aids to resolve any such am-

biguity. Section 5, as proposed and ratified is a verbatim copy of the first part of section 5 in the draft of a bill submitted by the Bond Commission to the Legislative Council on November 30, 1942, pursuant to the Commission's previous reports to Governor O'Conor. The remainder of section 5 in that draft was omitted in the amendment as proposed and ratified. It may be noted that section 5, as construed in the case at bar, seems to be in accord with the Commission's published recommendations that every vacancy be filled by appointment for not less than one nor more than three years and that all judges be appointed in the first instance and be assured of one year of service by virtue of the appointment. In its Interim Report, dated June 1, 1942 the Commission said: "At present judges are appointed to fill vacancies until the next Gubernatorial election, i. e., for one year after expiration of a fifteen-year term and in other cases for a period ranging from a few days to almost four years. The commission believes that better results, more satisfactory to the voters, would be obtained by the election of judges at the two year intervals instead of election of the present long tickets of judges once in four years. In this way every vacancy would be filled by appointment for not less than one nor more than three years, and at every election the voters would have an opportunity to vote for a sitting judge." In its Final Report, dated October 21, 1942, it also said: "It is recommended that all judges of the Court of Appeals, and of the trial courts in Baltimore City and the counties, be appointed in the first instance by the Governor, and that they be assured of one year of service by virtue of the appointment, and then, after that year, at the time of the next election in the state, either for national or state officers, be required to stand for election by popular vote if they wish to continue."

*For the reasons above stated, this court on April 2, 1948, by a per curiam order, affirmed the order of the lower court.*