REED *v.* McKELDIN, GOVERNOR

[No. 30, October Term, 1955 (Adv.)]

554

*Decided June 22, 1955.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Franklin G. Allen,* with whom were *Piper and Marbury* on the brief, for appellant.

C. *Ferdinand Sybert, Attorney General,* and *Harrison L. Winter, Deputy Attorney General,* for appellee.

DELAPLAINE, J., delivered the opinion of the Court

This suit was instituted in the Circuit Court of Baltimore City by William L. Reed, a citizen and taxpayer of Baltimore, against Theodore R. McKeldin, Governor of the State of Maryland, to determine whether the Governor has the constitutional power to appoint two additional Associate Judges of the Supreme Bench of Baltimore City, as provided by Chapter 269 of the Acts of 1955, prior to the election in November, 1956.

This Act, which adds a new section to the Baltimore City Charter, 1949 Ed., to be known as Section 230A, provides as follows:

"In addition to the present membership of the Supreme Bench of Baltimore City, there shall be two aditional Associate Judges of said Court. Said Associate Judges shall be selected in the manner provided by Section 5 of Article 4 of the Constitution of this State, and thereafter such Judges shall be elected by the legal and qualified voters of Baltimore City at the election to be held on Tuesday next after the first Monday of November, 1956. The said Judges, when appointed or when elected, shall be subject to all of the provisions of the Constitution and laws relating to the Supreme Bench of Baltimore City and the several Judges thereof."

The Act also provides that if any phrase, clause, sentence, words or part of the Act shall be adjudged by any

court of competent jurisdiction to be unconstitutional, such judgment or decree shall not invalidate the remainder thereof; and in the event that such court may adjudge or decree that the additional Associate Judges may not be selected in the first instance in the manner provided by Section 5 of Article 4 of the Constitution, then they shall be elected by the voters in November, 1956.

The Act was approved by the Governor on April 11, 1955, and took effect on June 1, 1955.

Complainant alleged (1) that the Act is unconstitutional in so far as it provides for the appointment by the Governor of the two Associate Judges in the first instance; (2) that Governor McKeldin announced his intention to appoint the two Judges promptly after June 1, 1955; (3) that unless the Governor is restrained, he will proceed to make the appointments, thereby illegally subjecting the State of Maryland and the City of Baltimore to the expense of paying the salaries of the two Judges, who will perform judicial duties while a serious doubt exists as to the validity of their selection and their official acts; and (4) that it is in the public interest to decide the issue before the Governor makes such appointments.

Complainant prayed the Court to declare the Act unconstitutional in so far as it provides for the appointment by the Governor of the two additional Associate Judges, and to enjoin the Governor from appointing them.

On May 24, 1955, the Court entered a decree declaring that the Act is constitutional and valid in so far as it provides for the appointment by the Governor of the two additional Judges, and that such power is effective on June 1, 1955. The decree also dismissed the bill of complaint.

On May 26 complainant entered an appeal from that decree to this Court. We advanced the case because of its public importance.

Under the Uniform Declaratory Judgments Act, Code 1951, art. 31A, sec. 1 *et seq.*, constitutional issues may be

decided provided that there is no by-passing of an administrative agency. *Pressman v. State Tax Commission,* 204 Md. 78, 84, 102 A. 2d 821. It has also long been established in this State that a taxpayer may invoke the aid of a court of equity to restrain the action of a public official or an administrative agency when such action is illegal or *ultra vires* and may injuriously affect the taxpayer's rights and property. *Baltimore Retail Liquor Packages Stores Ass'n v. Board of License Com'rs,* 171 Md. 426, 429, 189 A. 209, 109 A. L. R. 1253; *Masson v. Reindollar,* 193 Md. 683, 69 A. 2d 482.

The Constitution of Maryland, as drafted by the Constitutional Convention in 1867, made provisions in Article 4 for the Judiciary Department of the State of Maryland.

Section 1 provided that the judicial power of the State shall be vested in the Court of Appeals, Circuit Courts, Courts of Baltimore City, Orphans' Courts, and Justices of the Peace.

Section 31 provided that there shall be elected by the voters of Baltimore City one Chief Judge and four Associate Judges, who shall constitute the Supreme Bench of Baltimore City.

Section 39 provided:

> "The General Assembly shall, whenever it may think the same proper and expedient, provide, by Law, another Court for the City of Baltimore, and prescribe its jurisdiction and powers; in which case there shall be elected by the voters of said City, qualified under this Constitution, another Judge of the Supreme Bench of Baltimore City, * * *."

Section 5 provided that after the election for Judges, the Governor shall appoint to fill any vacancy "upon the expiration of the term, or in case of the death, resignation, removal, or other disqualification of any Judge."

In 1942 the Commission on the Judiciary Article of the Constitution, generally known as the Bond Commission, which was appointed by Governor O'Conor to draft recommendations for reorganization of the Judicial System

of the State, suggested that Section 5 of Article 4 of the Constitution be amended in the following respects: (1) to empower the Governor, upon the "creation of the office of any judge," to appoint to fill the office until the election; (2) to provide that at elections the names of the judges in office should be put on the ballots, which should bear no party designation of any candidates, and the names of candidates other than the judges in office should be put on the ballots only on petition, and not by primary elections; and (3) to empower the Legislature to increase or decrease the number of judges "for any of the circuits." 48 *Reports, Md. State Bar Ass'n* (1943), 3, 20-22.

In March, 1943, the State Senate struck out the second and the third amendments of Section 5; but it adopted the first amendment to empower the Governor to appoint upon "creation of the office of any judge." Senate Journal, 1943 Sess., 875, 908, 909.

The Bond Amendment, Chapter 772 of the Acts of 1943, was ratified by the voters in November, 1944. Section 5, amended again by Chapter 703 of the Acts of 1945, ratified in November, 1946, provides:

"Upon every occurrence or recurrence of a vacancy through death, resignation, removal, disqualification by reason of age or otherwise, or expiration of the term of fifteen years of any judge, or creation of the office of any judge, or in any other way, the Governor shall appoint a person duly qualified to fill said office, who shall hold the same until the election and qualification of his successor; * * *."

It was the contention of complainant that the amendment of Section 5 to empower the Governor to appoint to fill a vacancy upon "creation of the office of any judge" does not apply to the Supreme Bench of Baltimore City, because the application of this amendment to the Supreme Bench was contingent upon the adoption of the amendment to empower the Legislature to increase or decrease

the number of judges "for any of the circuits," and that amendment was not adopted.

Complainant urged that the Bond Commission assumed that all of its proposals would be adopted by the Legislature and would work together as part of a reorganized Judicial System. That may be true. But the Commission did not indicate, even by implication, that the recommendation that the Governor should have the power to appoint in the first instance would be contingent upon the power of the Legislature to increase or decrease the number of judges. The Report of the Commission, in discussing the Number, Distribution and Assignment of Judges, did not discuss the method by which any additional judges would be selected. 48 *Reports, Md. State Bar Ass'n* (1943), 3, 22-24.

Complainant compared Section 5 with Section 21 of Article 4, which deals with the Circuit Courts for the Counties, namely the Judges for the First, Second, Third, Fourth, Fifth, Sixth, and Seventh Judicial Circuits. Section 21, which also was amended by the Bond Amendment, provides that the "number of judges for any of the circuits shall be subject to increase or decrease by law as provided in Section 5." Complainant conceded that Section 21 empowers the Governor to fill any vacancy upon "creation of the office of any judge" in any of the first seven Judicial Circuits, because it expressly provides that the number of judges shall be subject to increase or decrease as provided by Section 5. But he contended that Section 21 does not apply to the Supreme Bench of Baltimore City, the Eighth Circuit, and he contended that the Legislature did not intend to empower the Governor to make any appointment to fill a vacancy upon "creation of the office of any judge" of the Supreme Bench.

It is a cardinal rule of construction that where the text of a constitutional provision is not ambiguous, the Court, in construing it, is not at liberty to search for its meaning beyond the Constitution itself. If the text is ambiguous, the Court should first endeavor to ascertain

its meaning from other parts of the instrument. It is not until the means of solution afforded by the entire Constitution have been exhausted without success that the Court is justified in calling outside facts or considerations to its aid. When that becomes necessary, however, it is permissible to inquire into the prior state of the law, the previous and contemporary history of the people, the circumstances attending the adoption of the organic law, as well as broad considerations of expediency. The object is to ascertain the reason which induced the framers to enact the provision in dispute and the purpose sought to be accomplished thereby, in order to construe the whole instrument in such way as to effect that purpose. The Court may avail itself of any light that may be derived from such sources, but it is not bound to adopt it as the sole ground of its decision. *Johns Hopkins University v. Williams,* 199 Md. 382, 86 A. 2d 892.

Likewise it is permissible for the Court, in order to find the purpose of the Constitution, to consult the proceedings of the Constitutional Convention which framed the Constitution, or, in the case of a constitutional amendment, the proceedings of the Legislature which proposed the amendment. However, these also are not of binding force, but have persuasive value if they throw useful light upon the purpose sought to be accomplished or upon the meaning attached to the words employed.

In construing the Constitution, where different parts of it seem to conflict, the Court must harmonize the different provisions if possible, and lean in favor of that construction which will render all words operative, rather than the construction which may make some words nugatory. In case of ambiguity, the whole Constitution is to be examined in order to determine the meaning of any part, and that construction should be given which will give effect to the entire instrument, and not raise any conflict between its parts which can be avoided. *Manly v. State,* 7 Md. 135, 147; *Groome v. Gwinn,* 43 Md. 572, 624; *Beall v. State,* 131 Md. 669, 676, 677, 103

A. 99; *Johnson v. Duke,* 180 Md. 434, 440, 24 A. 2d 304.

With these rules as a guide in finding the purpose of the Constitution, we take into consideration the object which the Bond Commission sought to be accomplished · in recommending an enlargement of the Governor's power of appointment. It is understood that the reason why the Commission urged this amendment of Section 5 was the belief that comparatively few voters would know which judicial aspirants are the best fitted for the judicial office, but that after a judge has served for at least one year on the bench the voters would then be in a better position to know of the judge's fitness for the office.

We are also impressed by the broad and emphatic language of Section 5. It directs that the Governor shall appoint upon every occurrence or recurrence of a vacancy through death, resignation, removal, disqualification, expiration of term, "or creation of the office of any judge, or in any other way."

Complainant relied heavily on Section 39 of Article 4, which was amended by Chapter 313 of the Acts of 1892, ratified in November, 1893. This section provides as follows:

"The General Assembly shall, as often, as it may think the same proper and expedient, provide by law for the election of an additional Judge of the Supreme Bench of Baltimore City, and whenever provision is so made by the General Assembly, there shall be elected by the voters of said City another Judge of the Supreme Bench of Baltimore City, * * *."

Complainant stressed the fact that Section 39 provides only for the election of any additional Judge, and makes no provision for appointment by the Governor. It is true also that Section 39, as it was originally framed by the Constitutional Convention in 1867, provided that any additional Judge should be elected by the voters. Prior to the adoption of the amendment of Section 5 by the Bond Amendment, there was no express provision

for appointment by the Governor to fill a vacancy caused by the creation of a judicial office.

We come then to the inquiry whether vacancies were created on the Supreme Bench after June 1, 1955, when Chapter 269 of the Acts of 1955 took effect. As this Court pointed out in *Hillman v. Boone,* 190 Md. 606, 610, 59 A. 2d 506, there has been uncertainty in some cases in other States as to whether the term "vacancy," without definition, includes a newly created office. But we think there can be no question of the rule accepted by the great weight of authority that when a statute establishes an office, a vacancy exists when the statute takes effect, unless its language imports futurity of selection.

In *Opinion of Justices (Matter of State Auditor),* 45 N. H. 590, where the issue was whether the Governor of New Hampshire had the right to appoint a State Auditor, the Supreme Court of New Hampshire said:

"There is now a vacancy in said office unquestionably; because the office has been created, and the law creating it is in force and the office is not filled, but is vacant. The term 'vacancy' means an empty space, a place unfilled, and when applied to an office, it means the state of being destitute of an incumbent or a want of the proper officer, to officiate in such office. * * * If a place is empty now, there is a vacancy, and it matters not whether it has once been filled, or whether it has always been empty. And so of an office."

In *Walsh v. Commonwealth,* 89 Pa. 419, 33 Am. Rep. 771, it appeared that in 1878 Luzerne County, Pennsylvania, was divided and Lackawanna County was erected therefrom. On the day when the establishment of Lackawanna County was proclaimed, the Governor of Pennsylvania appointed a County Surveyor. In a suit to test his title to the office, the question was presented whether at the time of the appointment the office of Surveyor was vacant. The Constitution of Pennsylvania provided that the Governor may fill any vacancy that may occur in any judicial or other elective office which he may be

authorized to fill. The Supreme Court of Pennsylvania, in holding that the office was vacant, said that the word "vacancy" aptly describes the condition of an office when it is created and has not been filled by an incumbent.

In *People ex rel. Snyder v. Hylan,* 212 N. Y. 236, 106 N. E. 89, it appeared that an amendment to the Constitution of the State of New York, effective January 1, 1914, increased the number of Judges of Kings County from two to four, and provided that the additional Judge should be chosen at the general election in 1915. It was held by the Court of Appeals of New York that vacancies existed in the offices which the Governor was authorized to fill by appointment, in view of the statute providing that when a new office shall be created, such office shall, for the purposes of appointment or election, be deemed vacant from the date of its creation until it shall be filled by appointment or election.

Even prior to the amendment of Section 5 by the Bond Amendment, it was recognized that after the initial election for judicial office created under Section 39, successive vacancies could properly be filled by appointment in Baltimore City. The application of Section 5 to Baltimore City was manifested by the subsequent amendment, Chapter 703 of the Acts of 1945, ratified in November, 1946, which authorizes the Governor to designate an Associate Judge of the Supreme Bench as Chief Judge, for the residue of the term for which he was elected. We think that Section 39 permits the creation of such an office prior to the initial election, and that the power of appointment granted to the Governor by Section 5 can now be exercised in such a case, where the intention of the Legislature to create the office upon the effective date of the Act is made clear, as it is in Chapter 269 of the Acts of 1955.

For the reasons we have given, we hold that the Governor has the constitutional power to appoint the two additional Associate Judges of the Supreme Bench, as provided by the statute.

*Decree Affirmed, with costs.*